JUDGE CASTEL                    07 CIV 8849

**MARK K. SCHONFELD**
**REGIONAL DIRECTOR**

**Attorney for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**3 World Financial Center, Room 400**
**New York, NY 10281-1022**
**(212) 336-1020**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

OCT 15 2007
U.S.D.... N.Y.
CASHIERS

---

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, : | |
| Plaintiff, : | 07 Civ. _____ (   ) |
| : | ECF CASE |
| -against- : | |
| : | |
| COLONIAL INVESTMENT : | |
| MANAGEMENT LLC, : | |
| COLONIAL FUND LLC, and : | COMPLAINT |
| CARY G. BRODY, : | |
| : | |
| : | |
| Defendants. : | |

---

Plaintiff Securities and Exchange Commission, for its Complaint against Defendants

Colonial Investment Management LLC ("CIM"), Colonial Fund LLC ("Colonial") and Cary G.

Brody (collectively, "Defendants"), alleges:

## SUMMARY

1.      This action arises from multiple violations of Rule 105 of Regulation M under the

Securities Exchange Act of 1934 ("Exchange Act") by Colonial, a New York-based hedge fund,

CIM, its adviser, and Brody, a principal of CIM and a Managing Director and investor in the

hedge fund. Between 2001 and 2004, Defendants violated Rule 105 when they used shares

purchased in at least eighteen registered public offerings to cover short sales that occurred during the five business days before the pricing of those offerings (the "restricted period"). Defendants realized profits from this illegal trading in excess of $1.48 million, some of which directly benefited Defendant Brody because he was an investor in Colonial and his compensation was based in part on Colonial's profits.

2.      During the time of the conduct alleged in this Complaint, Rule 105 prohibited covering a short sale with securities purchased in a registered offering if the short sale occurred during the restricted period. In general, the purpose of Rule 105 is to prevent manipulative trading by short sellers prior to registered public offerings and to promote offering prices that are based upon open market prices, determined by supply and demand, rather than by artificial forces. Short sellers who violate the rule's prohibitions can profit unfairly because they largely avoid exposure to market risk by using shares purchased at a discount in a registered offering to cover restricted period short sales.

3.      At all relevant times, Defendant Brody, and through him Defendant CIM, made all major trading and investment decisions on behalf of Colonial. Defendant Brody directed, authorized, and/or supervised the trading of the securities that are at issue in this Complaint, including the covering transactions that are alleged to have violated Rule 105 and post-cover sham transactions that were executed to conceal the violations.

4.      Unless enjoined by the Court it is likely that the Defendants will continue to engage in the acts and practices alleged herein or acts of similar purport and object. Accordingly, the Commission seeks a judgment: (1) permanently enjoining each Defendant pursuant to Exchange Act § 21(d)(1) [15 U.S.C. § 78u(d)(1)] from further violating Rule 105 of

Regulation M [17 C.F.R. § 242.105]; (2) requiring Defendants to disgorge all their ill-gotten gains, with prejudgment interest, under the Court's inherent equitable powers [18 U.S.C. § 78u(d)(5)]; and (3) imposing civil monetary penalties against Defendant Brody under Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## VIOLATIONS

5.    By virtue of the foregoing conduct Defendants CIM, Colonial and Brody directly or indirectly, singly or in concert, have engaged in acts, practices, and courses of business that constitute violations of Rule 105 of Regulation M [17 C.F.R. § 242.105].

## JURISDICTION AND VENUE

6.    The Commission brings this action pursuant to Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)] seeking a final judgment:

   a.    permanently enjoining CIM, Colonial and Brody from further violations of Rule 105 of Regulation M [17 C.F.R. § 242.105];

   b.    ordering Defendants CIM, Colonial and Brody to disgorge any ill-gotten gains and to pay prejudgment interest thereon, jointly and severally; and

   c.    imposing civil money penalties on Defendant Brody pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

7.    This Court has jurisdiction over this action pursuant to Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(e) and 78aa].

8.    Venue is proper under Exchange Act Section 27 [15 U.S.C. § 78aa] because Colonial has its principal place of business in New York, New York and certain of the transactions, acts, practices, and courses of business alleged in this Complaint occurred in the

Southern District of New York. Among other things, a number of Colonial's securities transactions originated from its headquarters in Manhattan and were executed through a broker-dealer located in Manhattan.

9.  CIM, Colonial and Brody, directly or indirectly, singly or in concert, have made use of the means and instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this Complaint.

## DEFENDANTS

10.  **Colonial Investment Management LLC** is Colonial's managing member and adviser. CIM's managing member is Colonial Asset Management Advisors, Inc., of which Brody is a principal. As CIM's Managing Director, Brody is a principal and alter ego of CIM.

11.  **Colonial Fund LLC** is a private hedge fund headquartered in New York, New York. Colonial holds itself out as a private investment company under Section 3(c)(1) of the Investment Company Act of 1940 [15 U.S.C. § 80a-3(c)(1)]. Brody is a Managing Director of Colonial.

12.  **Cary G. Brody**, age 37, resides in Connecticut. He functions as Colonial's adviser. Brody is a professional securities trader who directed, approved, and/or supervised all of Colonial's transactions that are the subject of this Complaint. Brody also has personal funds invested in Colonial.

4

## FACTS

### Overview of Rule 105

13.     At all relevant times, Rule 105 provided, in pertinent part, "[i]n connection with an offering of securities for cash pursuant to a registration statement or a notification on Form 1-A . . . filed under the Securities Act, it shall be unlawful for any person to cover a short sale with offered securities purchased from an underwriter or broker or dealer participating in the offering, if such short sale occurred during . . . [t]he period beginning five business days before the pricing of the offered securities and ending with such pricing . . ." [17 C.F.R. § 242.105]. Rule 105 is prophylactic and its prohibitions apply regardless of the short seller's intent in effecting the short sales.

14.     In general, the purpose of Rule 105 is to prevent manipulative trading prior to public offerings by short sellers who could largely avoid exposure to market risk by using shares purchased at a discount in a registered offering to cover restricted period short positions. Short sales by those who know or have a high degree of assurance that they will be able to obtain discounted shares in a registered offering artificially distort the market and erode the integrity of the offering price.

15.     The Commission amended Rule 105 effective October 9, 2007. The amended rule generally prohibits purchasing a security in a registered offering if the buyer has a restricted period short position in that security. The Defendants' conduct alleged in this Complaint would violate the amended Rule 105 as well.

5

**Brody's Role in Colonial's Violations**

16.     As Colonial's head trader, Defendant Brody typically was aware of and approved Colonial's purchases of stock in registered offerings, made some of the restricted period short sales, and was otherwise involved in the pre-offering process on behalf of Colonial.

17.     Defendant Brody was responsible for and supervised all of Colonial's trades, including the improper trades discussed in this Complaint that are alleged to have violated Rule 105. Brody tracked and reviewed Colonial's purchases, sales, and profit and loss positions.

18.     Defendant Brody was familiar with the prohibitions of Rule 105.

**Colonial's Violations of Rule 105**

19.     Colonial placed its intraday market trades with various executing brokers or through computerized trading platforms, and later reported those trades to its prime broker.

20.     With respect to each of the eighteen securities discussed in this Complaint, Defendant Colonial did not own the securities that it sold in advance of the registered public offerings and therefore engaged in "short sales" as defined in Rule 3b-3 under the Exchange Act [17 C.F.R. § 240.3b-3] (now Rule 200(a) of Regulation SHO [17 C.F.R. § 242.200(a)]) .

21.     Colonial had a restricted period short position in each of the securities discussed in this Complaint and purchased shares of the security in the registered offering of that security. In each case, at the end of the day of the offering Colonial had no short position. Colonial violated Rule 105 when it covered restricted period short positions with shares purchased in registered public offerings of the following securities:  CoorsTek, Inc., Intersil Corp., Endo Pharmaceuticals Holdings Inc., The Midland Co., Cubist Pharmaceuticals Inc., Essex Corp., Nastech Pharmaceutical Company, Inc., Legg Mason, Inc., Technical Olympic USA, Inc.,

6

SupportSoft, Inc., White Electronic Designs Corp., Net2Phone Inc., Komag, Inc., Palmsource

Inc., Integrated Silicon Solutions, Inc., Pain Therapeutics Inc., Atari Inc. and LCC International

Inc.

### a.    CoorsTek, Inc. (CRTK)

22.    On May 24, 2002, Colonial purchased 95,000 shares of CRTK at $33 per share in

a registered offering and marked the transaction "CS," meaning "cover short." During the five

business days before the pricing of this offering, Colonial sold short a net of 53,900 CRTK

shares at prices between $35.79 and $41.12 per share. In violation of Rule 105, Colonial fully

covered its restricted period short position with shares purchased in the offering. Colonial

realized a profit of approximately $201,089 from the illicit trading.

### b.    Intersil Corp. (ISIL)

23.    On October 31, 2001, Colonial purchased 425,000 shares of ISIL at $31.50 per

share in a registered offering and marked the transaction "CS," meaning "cover short." During

the five business days before the pricing of this offering, Colonial sold short a net of 270,700

ISIL shares at prices averaging $33.46 per share. In violation of Rule 105, Colonial fully

covered its restricted period short position with shares purchased in the offering. Colonial

realized a profit of approximately $530,649 from the illicit trading.

### c.    Endo Pharmaceuticals Holdings Inc. (ENDP)

24.    On July 2, 2003, Colonial purchased 202,000 shares of ENDP at $15.50 per share

in a registered offering. During the five business days before the pricing of this offering,

Colonial sold short a net of 162,000 ENDP shares at prices of $16.53 and $16.16 per share. In

violation of Rule 105, Colonial fully covered its restricted period short position with shares

purchased in the offering. Colonial realized a profit of approximately $136,671 from the illicit trading.

### d.    The Midland Co. (MLAN)

25.    On November 19, 2004, Colonial purchased 5,000 shares of MLAN at $27.60 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net of 6,174 shares at prices averaging $29.16 per share. In violation of Rule 105, Colonial used all of its shares purchased in the offering to partially cover its restricted period short position. Colonial realized a profit of approximately $7,783 on the portion of its restricted period short position that it covered with the offered shares.

### e.    Cubist Pharmaceuticals Inc. (CBST)

26.    On November 23, 2004, Colonial purchased 7,000 shares of CBST at $11.20 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net of 10,500 CBST shares at prices averaging $10.73 per share. In violation of Rule 105, Colonial used all of its offered shares to partially cover its short position but sustained a loss of approximately $3,304, partly because it did not purchase the offered shares at a price that was lower than the average price at which it sold short during the restricted period.

### f.    Essex Corp. (KEYW)

27.    On November 23, 2004, Colonial purchased 10,000 shares of KEYW at $16.50 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net of 5,000 KEYW shares at prices averaging $17.69 per share. In violation of Rule 105, Colonial fully covered its restricted period short position with shares

purchased in the offering. Colonial realized a profit of approximately $5,960 from the illicit trading.

g.     **Nastech Pharmaceutical Company, Inc. (NSTK)**

28.     On December 9, 2004, Colonial purchased 25,000 shares of NSTK at $13.50 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net of 15,400 NSTK shares at prices averaging $15.49 per share. In violation of Rule 105, Colonial fully covered its restricted period short position with shares purchased in the offering. Colonial realized a profit of approximately $30,638 from the illicit trading.

h.     **Legg Mason, Inc. (LM)**

29.     On December 16, 2004, Colonial purchased 5,000 shares of LM at $70.30 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net of 10,000 LM shares at prices averaging $69.76 per share. In violation of Rule 105, Colonial used all of its offered shares to partially cover its short position but sustained a loss of approximately $2,700, partly because it did not purchase the offered shares at a price that was lower than the average price at which it sold short during the restricted period.

i.     **Technical Olympic USA, Inc. (TOUS)**

30.     On November 14, 2003, Colonial purchased 25,000 shares of TOUS at $26 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net 10,200 TOUS shares at prices averaging $29.37 per share. In violation of Rule 105, Colonial fully covered its restricted period short position with shares purchased in the offering. Colonial realized a profit of approximately $34,377 from the illicit trading.

31.    After violating Rule 105 by covering its restricted period short position with shares purchased in the offering, Colonial placed contemporaneous orders to buy and sell 10,200 TOUS shares—the same number of shares that it was previously short. Colonial directed the executing broker to execute these matched orders at the same price. These riskless transactions were shams that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering.

j.    **SupportSoft, Inc. (SPRT)**

32.    On November 19, 2003, Colonial purchased 50,000 shares of SPRT at $12 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net 25,000 SPRT shares at prices averaging $12.27 per share. In violation of Rule 105, Colonial fully covered its restricted period short position with shares purchased in the offering. Colonial realized a profit of approximately $6,755 from the illicit trading.

33.    After violating Rule 105 by covering its restricted period short position with shares purchased in the offering, Colonial placed contemporaneous orders to buy and sell through the same broker 25,000 SPRT shares—the same number of shares that it was previously short. These transactions were shams that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering.

k.    **White Electronic Designs Corp. (WEDC)**

34.    On July 2, 2003, Colonial purchased 15,000 shares of WEDC at $10 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net 25,000 WEDC shares at prices averaging $10.55 per share. In violation of Rule

105, Colonial partially covered its restricted period short position with shares purchased in the offering. Colonial realized a profit of approximately $8,230 from the illicit trading.

35.     After violating Rule 105 by covering its restricted period short position with shares purchased in the offering, Colonial placed contemporaneous orders to buy and sell through the same broker 15,000 WEDC shares—the same number of shares that it was previously short. These transactions were shams that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering.

**I.     Net2Phone Inc. (NTOP)**

36.     On November 20, 2003, Colonial purchased 450,000 shares of NTOP at $4.50 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net of 250,000 NTOP shares at prices averaging $5.17 per share. In violation of Rule 105, Colonial fully covered its restricted period short position with shares purchased in the offering. Colonial realized a profit of approximately $167,452 from the illicit trading.

37.     After violating Rule 105 by covering its restricted period short position with shares purchased in the offering, Colonial placed contemporaneous orders to buy and sell through the same broker 250,000 NTOP shares—the same number of shares that it was previously short—and directed the executing broker to cross the sell order with the buy order at the same price. These transactions were shams that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering.

11

**m.    Komag, Inc. (KOMG)**

38.    On January 23, 2004, Colonial purchased 50,000 shares of KOMG at $20 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net of 4,000 KOMG shares at prices averaging $21.50 per share. In violation of Rule 105, Colonial fully covered its restricted period short position with shares it earlier purchased in the offering. Colonial realized a profit of approximately $6,000 from the illicit trading.

39.    After violating Rule 105 by covering its restricted period short position with shares purchased in the offering, Colonial placed contemporaneous orders to buy and sell 4,000 KOMG shares—the same number of shares that it was previously short. These transactions were shams that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering.

**n.    Palmsource Inc. (PSRC)**

40.    On April 2, 2004, Colonial purchased 20,000 shares of PSRC at $18 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net of 15,800 PSRC shares at prices averaging $18.70 per share. In violation of Rule 105, Colonial fully covered its restricted period short position with shares purchased in the offering. Colonial realized a profit of approximately $11,042 from the illicit trading.

41.    After violating Rule 105 by covering its restricted period short position with shares purchased in the offering, Colonial placed contemporaneous orders to buy and sell 15,800 PSRC shares—the same number of shares that it was previously short. These transactions were

shams that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering.

o.    **Integrated Silicon Solutions, Inc. (ISSI)**

42.    On January 29, 2004, Colonial purchased 20,000 shares of ISSI at $16.50 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net of 42,500 ISSI shares at prices averaging $17.37 per share. In violation of Rule 105, Colonial partially covered its restricted period short position with shares purchased in the offering. Colonial realized a profit of approximately $17,354 from the illicit trading.

43.    After violating Rule 105 by covering its restricted period short position with shares purchased in the offering, Colonial placed contemporaneous orders to buy and sell 20,000 ISSI shares—the same number of shares it bought in the offering. These transactions were shams that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering.

p.    **Pain Therapeutics Inc. (PTIE)**

44.    On September 22, 2003, Colonial purchased 225,000 shares of PTIE at $6.50 per share in registered offering. During the five business days before the pricing of this offering, Colonial sold short a net of 84,167 PTIE shares at prices averaging $6.79 per share. Colonial's overall short position was 90,000 shares because it also sold short prior to the restricted period. In violation of Rule 105, Colonial fully covered its restricted period short position with shares purchased in the offering. Colonial realized a profit of approximately $24,221 from the illicit trading.

13

45.    After violating Rule 105 by covering its restricted period short position with shares purchased in the offering, Colonial placed contemporaneous orders to buy and sell 90,000 PTIE shares—the same number as its total pre-offering short position, which included its restricted period short sales. These transactions were shams that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering.

q.    **Atari Inc. (ATAR)**

46.    On September 19, 2003, Colonial purchased 1,018,000 shares of ATAR at $4.25 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net of 525,000 shares at prices averaging $4.77 per share. In violation of Rule 105, Colonial fully covered its restricted period short position with shares purchased in the offering. Colonial realized a profit of approximately $274,660 from the illicit trading.

47.    After violating Rule 105 by covering its restricted period short position with shares purchased in the offering, Colonial placed three pairs of orders through the same executing broker to contemporaneously buy and sell a total of 543,000 ATAR shares, which included the same number of shares as its restricted period short position. These transactions were shams that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering.

r.    **LCC International Inc. (LCCI)**

48.    On November 24, 2003, Colonial purchased 100,000 shares of LCCI shares at a price of $4.10 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net of 30,200 shares at prices averaging $4.80 per share.

14

Colonial's overall short position was 40,700 shares because it also sold short prior to the restricted period. In violation of Rule 105, Colonial fully covered its restricted period short position with shares purchased in the offering. Colonial realized a profit of approximately $21,159 from the illicit trading.

49.    After violating Rule 105 by covering its restricted period short position with shares purchased in the offering, Colonial placed contemporaneous orders to buy and sell 40,700 LCCI shares—the same number as its total pre-offering short position, which included its restricted period short sales. Colonial directed the executing broker to cross the sell order with the buy order at the same price. These transactions were shams that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering.

50.    The Commission is informed and believes and on that basis alleges that during 2004 and 2005 Defendants may have committed further violations of Rule 105 in connection with additional registered offerings by covering restricted period short sales with shares purchased in the registered offerings.

## CLAIM FOR RELIEF

### Violations of Rule 105 of Regulation M Under the Exchange Act

51.    Paragraphs 1 through 50 are realleged and incorporated by reference as if set forth fully herein.

52.    As set forth above, in connection with at least eighteen public offerings between October 2001 and December 2004, Defendants CIM, Colonial and Brody, directly or indirectly, singly or in concert, by the use of the means or instruments of transportation or communication

15

in, or the means or instrumentalities of, interstate commerce, or by the use of the mails, or of a facility of a national securities exchange, violated Rule 105 of Regulation M [17 C.F.R. § 242.105] by covering short sales made during the period beginning five days before the pricing of the offering securities with offered securities purchased in those offerings.

53.    By reason of the activities described herein, the Defendants, singly or in concert, directly or indirectly, violated and, absent an injunction, again would violate Rule 105 of Regulation M [17 C.F.R. § 242.105].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court enter a Final Judgment:

## I.

Permanently restraining and enjoining Defendants CIM, Colonial and Brody, their officers, agents, servants, employees, and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Rule 105 of Regulation M [17 C.F.R. § 242.105].

## II.

Ordering Defendants CIM, Colonial and Brody, to disgorge any ill-gotten gains from the conduct alleged herein, jointly and severally, and to pay prejudgment interest thereon.

16

### III.

Imposing civil money penalties on Defendant Brody pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

### IV.

Granting such other and further relief as to this Court seems just and proper.

Dated: New York, New York
       October 15, 2007

By: _____
       Mark K. Schonfeld

       Regional Director
       New York Regional Office
       SECURITIES AND EXCHANGE COMMISSION
       3 World Financial Center, Room 400
       New York, NY 10281-1022
       (212) 336-1020
       SchonfeldM@sec.gov
       Attorney for Plaintiff

Of Counsel:

Andrew M. Calamari
Robert J. Keyes
Ken C. Joseph
Valerie A. Szczepanik
Laura V. Yeu