UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION, :

    Plaintiff,

  -against-

COLONIAL INVESTMENT
    MANAGEMENT LLC,
COLONIAL FUND LLC, and
CARY G. BRODY,

    Defendants.

---

07 CV 8849 (PKC)
ELECTRONIC FILING


# MEMORANDUM OF LAW OF DEFENDANTS IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)


DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, New York  10036
(212) 227-6500


Of Counsel:
Ira Lee Sorkin
Nicole De Bello
Bradley Brown – Legal Clerk

DOCSNY.281291.01

## **TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ..........................................................................................1

II. FACTS ................................................................................................................................2

    A. Background of Rule 105 ........................................................................................3

III. ARGUMENT ......................................................................................................................5

    A. The Amended Complaint Should be Dismissed .....................................................5

        1. The Amended Complaint Fails to Allege Facts Sufficient to Support a Reasonable Likelihood that a Past Wrongdoing Will Recur ............................5

    B. The Commission Cannot Apply a New Rule *Ex Post Facto* ................................7

    C. The Amended Complaint's Conclusory Factual Allegations Fail to Cure the Deficiencies of the Initial Complaint .............................................................10

IV. CONCLUSION .................................................................................................................11

# TABLE OF AUTHORITIES

Page

Cases

*Air India v. Brien*, 261 F. Supp. 2d 134 (E.D.N.Y. 2003) ................................................................10

*Am. Min. Congress v. Mine Safety & Health Admin.,* 995 F.2d 1106 (D.C. 1993) ........................8

*Caruso v. Blockbuster-Sony Music Entm't Ctr. at the Waterfront*, 193 F.3d 730 (3d Cir. 1999) ..................................................................................................................................7, 9

*Gill v. Paige*, 226 F. Supp. 2d 366 (E.D.N.Y. 2002) ........................................................................8

*Hemp Indus. Ass'n v. DEA*, 333 F.3d 1082 (9th Cir. 2003) ............................................................9

*Lewis-Mota v. Sec'y of Labor*, 469 F.2d 478 (2d Cir. 1972) ............................................................7

*Pinto v. Menifee*, No. 04 Civ. 5839, 2004 U.S. Dist. LEXIS 26071 (S.D.N.Y. Dec. 23, 2004) ..........................................................................................................................................8

*SEC v. Bausch & Lomb Inc.*, 565 F.2d 8 (2d Cir. 1977) ..................................................................6

*SEC v. Commonwealth Chemical Sec.* 574 F.2d 90 (2d Cir. 1978) .................................................6

*SEC v. Parklane Hosiery Co. Inc.*, 558 F.2d 1083 (2d Cir. 1977) ..................................................6

*Sweet v. Sheahan*, 235 F.3d 80 (2d Cir. 2000) ..........................................................................7, 10


Statutes

15 U.S.C. § 80a-3(c)(1) .....................................................................................................................2

17 C.F.R. § 242.105 (2007) ..............................................................................................................5

17 C.F.R. § 242.105 (1997) ..............................................................................................................2

62 Fed. Reg. 520 ...............................................................................................................................8

68 Fed. Reg. 62,972 ..................................................................................................................3, 8, 9

69 Fed. Reg. 48,008 ..........................................................................................................................4

71 Fed. Reg. 75,002 ..........................................................................................................................4

Other Authorities

Kenneth Culp Davis and Richard J. Price, Jr.,
    1 Admin. Law Treatise § 6.10 (1994) .................................................................................7

RACHEL MCTAGUE, SEC MOVES TO REPEAL TICK TEST, AMEND ANOTHER ANTI-
    MANIPULATION RULE, 38 Sec. Reg. & L. Rep. 2041, 2042 (Dec. 11, 2006) ..........................4

DOCSNY.281291.01

## I. PRELIMINARY STATEMENT

Defendants Colonial Investment Management, LLC ("CIM"), Colonial Fund LLC ("Colonial"), and Cary G. Brody ("Brody") respectfully submit this Memorandum of Law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Amended Complaint ("Am Compl.") filed by Plaintiff Securities and Exchange Commission ("the Commission" or "SEC"), which alleges violations of Rule 105 of Regulation M ("Rule 105") promulgated under the Securities Exchange Act of 1934 ("Exchange Act").

The Commission asks the Court, among other things, to issue an Order of Permanent Injunction against the Defendants from engaging in future violations of Rule 105, based on allegations of past violations of Rule 105 that occurred between October 31, 2001 and December 16, 2004. The Commission's Initial Complaint, however, was filed on October 15, 2007 six days after the Commission adopted a new Rule 105 that substantively altered the core prohibition embedded in the old rule by proscribing an entirely different violative act. The Commission's claim for injunctive relief cannot survive simply by alleging by inference that the Defendants engaged in conduct that violated the "old" Rule 105 -- thus, they will violate the "new" Rule 105 -- because the violative act in the new Rule 105 was permitted by the old rule.

By way of example, under the Commission's logic, if the Defendants were alleged to have violated a rule prohibiting talking on cell phones while driving, then those allegations would be sufficient, with nothing more, to find a reasonable likelihood that the Defendants would violate a new rule prohibiting cell phones in cars, period. This logic is flawed and should not be the basis upon which this court grants injunctive relief.

Accordingly, because the Commission has not alleged the necessary elements for obtaining injunctive relief, the Amended Complaint fails to state a claim upon which relief may be granted, and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II.     FACTS

CIM is the managing member and adviser of Colonial. Amended Complaint (annexed to the accompanying Affidavit of Ira Lee Sorkin, dated December 4, 2007 (the "Sorkin Aff.") as Ex. A) ¶ 10. Brody is a principal of Colonial Asset Management Advisors, Inc. ("Colonial Asset Management"), which is the managing member of CIM. Am. Compl. ¶ 10.

Colonial, a private investment company under Section 3(c)(1) of the Investment Company Act of 1940 [15 U.S.C. § 80a-3(c)(1)], is a New York-based private hedge fund of which Brody is a managing director. Am. Compl. ¶ 11.

As alleged in the Amended Complaint, Colonial violated Rule 105 of Regulation M ("Rule 105") on eighteen separate occasions between October 31, 2001 and December 16, 2004. Sorkin Aff. ¶ 6. Promulgated by the Commission in January, 1997 Rule 105 is an anti-manipulation regulation that is intended to protect the integrity and fairness of the offering process by prohibiting short sellers from covering restricted period short positions with shares obtained in secondary offerings. Am. Compl. ¶ 14. During the time of Colonial's alleged violative trades, Rule 105 provided, in pertinent part:

> In connection with an offering of securities for cash pursuant to a registration statement or a notification on a Form 1-A . . . filed under the Securities Act, it shall be unlawful for any person to cover a short sale with offered securities purchased from an underwriter or broker or dealer participating in the offering, if such short sale occurred during . . . [t]he period beginning five business days before the pricing of the offered securities and ending with such pricing . . . .

17 C.F.R. § 242.105 (1997).

2

In substance, the Commission alleges that of the eighteen separate occasions, eight of the transactions constituted direct violations of Rule 105, while the remaining ten were "sham transactions," that had the effect of hiding violations of Rule 105. Sorkin Aff. ¶ 6. According to the Amended Complaint, these "shams" consisted of "riskless transactions . . . that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering." Am. Compl. ¶ 32.

### A.   Background of Rule 105

Since its promulgation in 1997, we have found only twelve reported cases brought by the Commission alleging violations of Rule 105, and each case was settled by way of consent. Sorkin Aff. ¶ 7.

In addition to the lack of case law regarding the scope of potential Rule 105 violations, the Commission has also offered very little guidance on the rule. As set forth in the Commission's Amended Complaint, on November 6, 2003 more than six years after its promulgation, the Commission for the first time publicly communicated that it was recently made aware of "conduct designed to evade" Rule 105. Short Sales, Securities Exchange Act Release No. 48709 (Oct. 28, 2003), 68 Fed. Reg. 62,972 at 62,999 (Nov. 6, 2003) ("Regulation SHO Proposing Release"); Am. Compl. ¶ 53.[1] While this proposing release provided no interpretative guidance with respect to Rule 105, it did acknowledge a level of uncertainty surrounding the rule by soliciting comments to improve the clarity of its language. *Id.*; Sorkin Aff. ¶ 8.

---

[1] Regulation SHO relates to covering short sales and the requirement, with certain exceptions, that the short seller "locate" securities to borrow before "going short." Regulation SHO is not relevant to the issues in this case.

The Amended Complaint does not point out, however, that on July 28, 2004, after thirteen of the eighteen alleged violative transactions had already occurred, the Commission issued in an adopting release for Regulation SHO ("Regulation SHO Adopting Release"), its *first and only* interpretative guidance with respect to Rule 105, providing two illustrative examples of "sham transactions" that, although not specifically prohibited by the plain language of the Rule, would, in the Commission's view, violate Rule 105. *See* Short Sales, Securities Exchange Act Release No. 34-50103 (July 28, 2004), 69 Fed. Reg. 48,008, at 48,020 (Aug. 6, 2004); Sorkin Aff. ¶ 9. As recently as December 6, 2006, recognizing that compliance with the old Rule 105 was still a vague and unclear proposition, Eric Sirri, Director of the Division of Market Regulation for the Commission, acknowledged that "[t]he question of what constitutes a covering transaction is a difficult one." RACHEL MCTAGUE, SEC MOVES TO REPEAL TICK TEST, AMEND ANOTHER ANTI-MANIPULATION RULE, 38 Sec. Reg. & L. Rep. 2041, 2042 (Dec. 11, 2006); Sorkin Aff. ¶ 11. The Commission also commented one week later, while proposing adoption of a new Rule 105, that "[if the covering component is not eliminated as the rule proposed], we would have to continue to address each variance on a case-by-case basis, which could increase uncertainty in the marketplace." Short Selling in Connection with a Public Offering, Securities Exchange Act Release No. 34-54888, 71 Fed. Reg. 75,002, at 75,005 (Dec. 13, 2006); Sorkin Aff. ¶ 12.

Finally, almost three years after the last alleged violative transaction in this case, the Commission promulgated a new Rule 105, effective October 9, 2007 which states in pertinent part:

> In connection with an offering of equity securities for cash pursuant to a registration statement or a notification on Form 1-A . . . it shall be unlawful for any person to sell short the security that is the subject of the offering and purchase the offered securities from an underwriter or broker

4

> or dealer participating in the offering if such short sale was effected during the period . . . beginning five business days before the pricing of the offered securities and ending with such pricing . . . .

17 C.F.R. § 242.105 (2007); Sorkin Aff. ¶ 13. With the adoption of the new Rule 105, the Commission eliminated the covering component as the violative act, thus replacing what was a vague and ambiguous rule with a black-and-white prohibition with definite parameters: An investor may now either sell short during the restricted period *or* participate in the allocation, but he cannot do *both*.[2]

The Commission further alleges in this case that Colonial and Brody did not institute sufficient internal controls to prevent violations of the old Rule 105. Am. Compl. ¶ 54. Upon these facts alone, the Amended Complaint claims that it is reasonably likely that the Defendants will violate the new Rule 105, which was not in effect during any relevant trading period, in the future. Am. Compl. ¶ 55.

### III.   ARGUMENT

#### A.   The Amended Complaint Should be Dismissed

##### 1.   The Amended Complaint Fails to Allege Facts Sufficient to Support a Reasonable Likelihood that a Past Wrongdoing Will Recur

The Commission cannot obtain injunctive relief against future violations of Rule 105 because it has failed to allege any violations of the rule in its current form. Instead, the Commission claims, based solely on alleged violations of a rule no longer in effect, that there is a reasonable likelihood that the Defendants will violate a new rule in the future, and because of this, an Order of Permanent Injunction against future violations of the new rule should issue. The allegations in the Commission's Amended Complaint are insufficient to support such an inferential leap-of-faith by this Court.

---

[2] There are certain exceptions to the new Rule 105 prohibitions, none of which are relevant to this case.

The Commission's Amended Complaint does not allege facts sufficient to carry its initial burden required for the issuance of a permanent injunction, as "[i]t is well settled that the Commission cannot obtain relief without positive proof of a reasonable likelihood that past wrongdoing will recur." *SEC v. Bausch & Lomb Inc.*, 565 F.2d 8, 18 (2d Cir. 1977) (*citing SEC v. Parklane Hosiery Co. Inc.*, 558 F.2d 1083, 1089 (2d Cir. 1977) (denying application for permanent injunction because the SEC failed to establish the essential element of injunctive relief that there exist a reasonable likelihood of repeated wrongdoing)). *See also SEC v. Commonwealth Chemical Sec.*, 574 F.2d 90, 100 (2d Cir. 1978). Accordingly, injunctive relief cannot be granted where there are no factual allegations that a defendant is reasonably likely to repeat the same wrongdoings in the future than those in which he engaged in the past. It follows, then, that injunctive relief is unavailable where, as here, there is no possibility that past violative conduct will be repeated, because the conduct that formed the predicate of the past alleged violations is no longer the same conduct that is proscribed by the rule currently in place.

In the instant case, the Commission has not sufficiently alleged – because it cannot – a reasonable likelihood that the Defendants will repeat violations of Rule 105 in its current form, because Rule 105 now prohibits conduct that was squarely within the bounds of legal activity under the old version. Here, the allegations cannot support the issuance of an injunction, because the standard for injunction requires the Commission to allege that the Defendants will *repeat past* violative conduct, which would require the Commission to show that the Defendants are likely to repeat violations of the old Rule 105. As emphasized by the Second Circuit, the Commission must go beyond the mere facts of a past violation of a rule to obtain an injunction against violating that same rule; a reasonable likelihood of recurrence must also be alleged. *Commonwealth Chemical*, 574 F.2d at 100. The Commission cannot allege such likelihood of

recurrence, because, where the old Rule 105 has been replaced with the significantly and substantively altered new Rule 105, violations of the old Rule 105, no longer in existence, cannot be repeated.

### B.  The Commission Cannot Apply a New Rule *Ex Post Facto*

An Order of Permanent Injunction in this case is also improper because the underlying violations of Rule 105 through alleged "sham transactions" were based on the Commission's *ex post facto* application of "interpretive guidance." In the Regulation SHO Adopting Release of July, 2004 the Commission attempted to retroactively amend Rule 105 under the guise of "interpretive guidance." However, "[a]n agency is not allowed to change a legislative rule retroactively through the process of disingenuous interpretation of the rule to mean something other than its original meaning." *Caruso v. Blockbuster-Sony Music Entm't Ctr. at the Waterfront*, 193 F.3d 730, 737 (3d Cir. 1999) (*quoting* Kenneth Culp Davis and Richard J. Price, Jr., 1 Administrative Law Treatise § 6.10 at 283 (1994)). In interpreting Rule 105 to cover so-called "sham transactions," the Commission was attempting to proscribe conduct that was not encompassed by Rule 105 when it was first promulgated and apply the new interpretation *ex post facto*.

The Commission's promulgation of "interpretive guidance" of the old Rule 105 was more akin to substantive rulemaking. *See Lewis-Mota v. Sec'y of Labor*, 469 F.2d 478, 481-82 (2d Cir. 1972) ("[T]he label that the particular agency puts upon its given exercise of administrative power is not, for our purposes, conclusive; rather it is what the agency does in fact."). Substantive rulemaking "create[s] new law, rights, or duties, in what amounts to a legislative act [while i]nterpretive rules . . . do not create rights, but merely clarify an existing statute or regulation." *Sweet v. Sheahan*, 235 F.3d 80, 91 (2d Cir. 2000) (internal quotations and citations

7

omitted). *See also Pinto v. Menifee*, No. 04 Civ. 5839, 2004 U.S. Dist. LEXIS 26071 at *39 (S.D.N.Y. Dec. 23, 2004).

The Second Circuit has adopted the *Am. Min. Congress v. Mine Safety & Health Admin.*, 995 F.2d 1106 (D.C. 1993) test for determining whether a rule is interpretive or legislative. *Gill v. Paige*, 226 F. Supp. 2d 366, 375 (E.D.N.Y. 2002). Whether a rule is legislative or interpretive depends on:

> (1) whether in the absence of the rule there would not be an adequate legislative basis for enforcement action or other agency action to confer benefits or ensure the performance of duties, (2) whether the agency has published the rule in the Code of Federal Regulations, (3) whether the agency has explicitly invoked its general legislative authority, or (4) whether the rule effectively amends a prior legislative rule. If the answer to any of these questions is affirmative, we have a legislative, not an interpretive rule.

*Am. Min. Congress*, 995 F.2d at 1112.

When the old Rule 105 was first promulgated, in response to a commenter who suggested that Rule 105 contain language prohibiting a short seller from "directly or indirectly" covering short sales with securities purchased in a public offering, the Commission specifically declined to include the word "indirectly." It said:

> Additionally, the rule does not expressly prohibit short sellers from "directly or indirectly" covering short sales out of the offering. The Commission decided not to add the term "indirectly" to Rule 10b-21 [Rule 105's predecessor] at the time that rule was adopted, and no different arguments have been presented that would alter its decision.

Regulation M Adopting Release, 62 Fed. Reg. 520, at 538 (Jan. 3, 1997).

"Sham transactions" were first mentioned in the Regulation SHO Proposing Release in July, 2004 where the Commission stated that: "Recently, the Commission has become aware of . . . conduct designed to evade, but which violates Rule 105 of Regulation M." 68 Fed. Reg. at

62,999. Because the Commission admitted that it "recently" became aware of the "sham transactions," it is not possible that such transactions were considered when Rule 105 was originally promulgated (over six years earlier). Moreover, the Commission stated further in July, 2004 that "[w]e are not proposing revisions to Rule 105 with respect to activities that violate the current rule," nevertheless, in the same paragraph, the SEC wrote that it was soliciting "comment regarding whether there should be additional language in the rule text of Rule 105 to address other transactions that cause the harm [that] Rule 105 is designed to prevent." *Id*. This language demonstrates that the Commission was contemplating extending the reach of Rule 105 by including "other transactions" which were explicitly not prohibited by Rule 105 when it was promulgated in 1997.

In *Caruso v. Blockbuster - Sony Music Entm't Ctr. at the Waterfront*, 193 F.3d 730 (3rd 1999), the court held that an agency cannot interpret a rule to address an issue that it said it was not addressing when it originally issued the rule. *Id.* at 736-37. In that case, the Architectural and Transportation Barriers Compliance Board (the "Board") promulgated a rule pursuant to the Americans With Disabilities Act regarding wheelchair accessible accommodations at sports and entertainment facilities. In issuing that rule, the Board explicitly stated in a subsequent rulemaking that it would address whether wheelchair seating must provide lines-of-sight over standing spectators. *Id*. The Department of Justice ("DOJ") later promulgated a rule identical to the Board's rule, stating that it was adopting the Board's rule as its own. *Id*. at 735. A few years later, the DOJ interpreted the rule as requiring wheelchair seating with lines-of-sight over standing spectators. *Id*. at 733. The *Caruso* court found that the DOJ's interpretation of the rule was impermissible because it attempted to change the rule without following the notice-and-comment requirements of the Administrative Procedure Act. *Id*. at 736-37. *See also Hemp*

*Indus. Ass'n v. DEA*, 333 F.3d 1082 (9th Cir. 2003) (holding that it was improper to interpret an existing regulation to cover something consciously omitted from the scope of the existing regulation and that it was necessary to promulgate a legislative rule in order to do so). Similarly, here, the Commission cannot later "interpret" Rule 105 to cover conduct that was not included in the scope of Rule 105 when it was adopted, then later use alleged violations of the newly "interpreted" rule as the predicate for injunctive relief.

By extending the scope of Rule 105 to include alleged "sham transactions," the Commission has created "new law," see *Sweet*, 235 F.3d at 91, and has "plainly altered the substantive rights of those affected by it." *Air India v. Brien*, 261 F. Supp. 2d 134, 141 (E.D.N.Y. 2003). In *Air India*, the INS claimed that an amendment to a regulation that allowed for the imposition of fines which were previously impermissible was merely interpretative. *Id.* The court held that the amendment went beyond interpretation because it altered the substantive rights of those affected by it. *Id.* Likewise, the Commission's "interpretation" of the old Rule 105 brought newly-created legal consequences arising from covering a short position established during the Rule 105 restricted period with open market shares.

### C. The Amended Complaint's Conclusory Factual Allegations Fail to Cure the Deficiencies of the Initial Complaint

The Amended Complaint attempts to cure the deficiencies of the initial complaint by alleging that the Defendants' failure to "institute sufficient internal controls or otherwise establish an adequate system to monitor for and prevent Colonial's violation of Rule 105," somehow evidences a propensity for violating securities laws in general. Am. Compl. ¶ 54. Presumably, these allegations were added to the complaint to reflect a likelihood that Defendants might violate the new Rule 105 in the future. These allegations are, however, factually hollow and conclusory, and they do not lead to a reasonable inference that failure to safeguard against

the alleged violation of one rule creates a likelihood of future violation of a different rule. If this inference were permitted, any compliance failure with respect to a single securities rule could serve as proper grounds to impose a permanent injunction against violating the full gamut of securities laws.

## IV.  CONCLUSION

For all the foregoing reasons, Colonial Investment Management LLC, Colonial Fund LLC, and Cary G. Brody ask that the Amended Complaint herein be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), and requests an award of the costs and attorneys fees, along with such other and further relief as this Court deems just and proper.

Dated: New York, New York
       December 4, 2007

Respectfully submitted,

DICKSTEIN SHAPIRO LLP


By:   s/Ira Lee Sorkin
      Ira Lee Sorkin
      Nicole De Bello
      Bradley Brown – Legal Clerk
1177 Avenue of the Americas
New York, New York  10036
(212) 227-6500
Attorneys for the Defendants

## Certificate of Service

I hereby certify that on December 4, 2007, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service upon the following parties and participants:

>Valerie A. Szczepanik, Esq.
>Laura V. Yeu, Esq.
>Securities and Exchange Commission
>3 World Financial Center – RM 400
>New York, New York  10281-1022
>Attorneys for Plaintiff

>s/Bradley Brown
>Bradley Brown, Legal Clerk
>Dickstein Shapiro LLP
>1177 Avenue of the Americas
>New York, New York  10036
>(212) 277-6500
>Attorneys for Defendants