short. These transactions were shams that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering.

    k.    **White Electronic Designs Corp. (WEDC)**

    35.    On July 2, 2003, Colonial purchased 15,000 shares of WEDC at $10 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net 25,000 WEDC shares at prices averaging $10.55 per share. In violation of Rule 105, Colonial partially covered its restricted period short position with shares purchased in the offering. Colonial realized a profit of approximately $8,230 from the illicit trading.

    36.    After violating Rule 105 by covering its restricted period short position with shares purchased in the offering, Colonial placed contemporaneous orders to buy and sell through the same broker 15,000 WEDC shares—the same number of shares that it was previously short. These transactions were shams that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering.

    l.    **Net2Phone Inc. (NTOP)**

    37.    On November 20, 2003, Colonial purchased 450,000 shares of NTOP at $4.50 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net of 250,000 NTOP shares at prices averaging $5.17 per share. In violation of Rule 105, Colonial fully covered its restricted period short position with shares purchased in the offering. Colonial realized a profit of approximately $167,452 from the illicit trading.

    38.    After violating Rule 105 by covering its restricted period short position with shares purchased in the offering, Colonial placed contemporaneous orders to buy and sell

11

through the same broker 250,000 NTOP shares—the same number of shares that it was previously short—and directed the executing broker to cross the sell order with the buy order at the same price. These transactions were shams that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering.

    m.    **Komag, Inc. (KOMG)**

39. On January 23, 2004, Colonial purchased 50,000 shares of KOMG at $20 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net of 4,000 KOMG shares at prices averaging $21.50 per share. In violation of Rule 105, Colonial fully covered its restricted period short position with shares it earlier purchased in the offering. Colonial realized a profit of approximately $6,000 from the illicit trading.

40. After violating Rule 105 by covering its restricted period short position with shares purchased in the offering, Colonial placed contemporaneous orders to buy and sell 4,000 KOMG shares—the same number of shares that it was previously short. These transactions were shams that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering.

    n.    **Palmsource Inc. (PSRC)**

41. On April 2, 2004, Colonial purchased 20,000 shares of PSRC at $18 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net of 15,800 PSRC shares at prices averaging $18.70 per share. In violation of Rule 105, Colonial fully covered its restricted period short position with shares purchased in the offering. Colonial realized a profit of approximately $11,042 from the illicit trading.

42. After violating Rule 105 by covering its restricted period short position with shares purchased in the offering, Colonial placed contemporaneous orders to buy and sell 15,800 PSRC shares—the same number of shares that it was previously short. These transactions were shams that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering.

    o. **Integrated Silicon Solutions, Inc. (ISSI)**

43. On January 29, 2004, Colonial purchased 20,000 shares of ISSI at $16.50 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net of 42,500 ISSI shares at prices averaging $17.37 per share. In violation of Rule 105, Colonial partially covered its restricted period short position with shares purchased in the offering. Colonial realized a profit of approximately $17,354 from the illicit trading.

44. After violating Rule 105 by covering its restricted period short position with shares purchased in the offering, Colonial placed contemporaneous orders to buy and sell 20,000 ISSI shares—the same number of shares it bought in the offering. These transactions were shams that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering.

    p. **Pain Therapeutics Inc. (PTIE)**

45. On September 22, 2003, Colonial purchased 225,000 shares of PTIE at $6.50 per share in registered offering. During the five business days before the pricing of this offering, Colonial sold short a net of 84,167 PTIE shares at prices averaging $6.79 per share. Colonial's overall short position was 90,000 shares because it also sold short prior to the restricted period. In violation of Rule 105, Colonial fully covered its restricted period short position with shares

13

purchased in the offering. Colonial realized a profit of approximately $24,221 from the illicit trading.

46.     After violating Rule 105 by covering its restricted period short position with shares purchased in the offering, Colonial placed contemporaneous orders to buy and sell 90,000 PTIE shares—the same number as its total pre-offering short position, which included its restricted period short sales. These transactions were shams that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering.

      q.     **Atari Inc. (ATAR)**

47.     On September 19, 2003, Colonial purchased 1,018,000 shares of ATAR at $4.25 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net of 525,000 shares at prices averaging $4.77 per share. In violation of Rule 105, Colonial fully covered its restricted period short position with shares purchased in the offering. Colonial realized a profit of approximately $274,660 from the illicit trading.

48.     After violating Rule 105 by covering its restricted period short position with shares purchased in the offering, Colonial placed three pairs of orders through the same executing broker to contemporaneously buy and sell a total of 543,000 ATAR shares, which included the same number of shares as its restricted period short position. These transactions were shams that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering.

14

r.   LCC International Inc. (LCCI)

49.   On November 24, 2003, Colonial purchased 100,000 shares of LCCI shares at a price of $4.10 per share in a registered offering. During the five business days before the pricing of this offering, Colonial sold short a net of 30,200 shares at prices averaging $4.80 per share. Colonial's overall short position was 40,700 shares because it also sold short prior to the restricted period. In violation of Rule 105, Colonial fully covered its restricted period short position with shares purchased in the offering. Colonial realized a profit of approximately $21,159 from the illicit trading.

50.   After violating Rule 105 by covering its restricted period short position with shares purchased in the offering, Colonial placed contemporaneous orders to buy and sell 40,700 LCCI shares—the same number as its total pre-offering short position, which included its restricted period short sales. Colonial directed the executing broker to cross the sell order with the buy order at the same price. These transactions were shams that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering.

51.   The Commission is informed and believes and on that basis alleges that during 2004 and 2005 Defendants may have committed further violations of Rule 105 in connection with additional registered offerings by covering restricted period short sales with shares purchased in the registered offerings.

52.   Defendants continued to violate Rule 105 even after they knew on or about July 17, 2003 that the Commission staff was investigating Defendants' participation in certain equity offerings. Despite having actual notice of the Commission's investigation, Defendants continued

15

to violate Rule 105, committing fourteen of the eighteen violations described above after July 17, 2003. Defendants committed nine of the ten violations involving the use of sham transactions after learning of the Commission's investigation.

53.     Defendants also continued to violate Rule 105 and engage in sham transactions designed to conceal their violations even after the Commission issued a statement explaining that it had taken action, and would continue to take action, against those participating in the type of contemporaneous purchase and sales sham transactions utilized by the Defendants to violate Rule 105. On November 6, 2003, the Commission proposed rules that included amendments to Rule 105 (Short Sales, 68 Fed. Reg. 62972 (Nov. 6, 2003) ("Proposing Release")). In the Proposing Release, the Commission stated that it had recently:

> become aware of, and taken action, with respect to conduct designed to evade, but which violates Rule 105. This conduct may involve short sales within the restricted period of Rule 105, the purchase of offering shares, and *the contemporaneous sale and purchase of the same class of shares as the offering shares*. For example, an individual may sell the shares in the market and immediately purchase an equivalent number of shares. Where the transaction is structured such that there is no legitimate economic purpose or substance to the contemporaneous purchase and sale, no genuine change in beneficial ownership, and/or little or no market risk, that transaction may be a sham transaction. The Commission would continue to consider enforcement action against those participating in sham transactions, structured in a manner to give the appearance of compliance with Rule 105, but in fact, violate the rule. We are not proposing revisions to Rule 105 with respect to activities that violate the current rule.

Short Sales, 68 Fed. Reg. at * 62999 (footnotes omitted) (emphasis added). Twelve of the eighteen violations discussed herein occurred after the date of the Proposing Release and seven of those twelve involved sham transactions such as those addressed in the Proposing Release.

54.     Despite Defendant Brody's awareness of Rule 105, his knowledge of Colonial's use of the FIFO method, and his responsibility as Colonial's head trader and adviser, he failed to

16

institute sufficient internal controls or otherwise establish an adequate system to monitor for and prevent Colonial's violations of Rule 105.

55. In light of Defendants' numerous and repeated past violations of Rule 105, and their brazen use of sham transactions to conceal their violative trading, it is likely that Defendants will continue to violate Rule 105, even as that rule has been amended, in the future.

## CLAIM FOR RELIEF

### Violations of Rule 105 of Regulation M Under the Exchange Act

56. Paragraphs 1 through 55 are realleged and incorporated by reference as if set forth fully herein.

57. As set forth above, in connection with at least eighteen public offerings between October 2001 and December 2004, Defendants CIM, Colonial and Brody, directly or indirectly, singly or in concert, by the use of the means or instruments of transportation or communication in, or the means or instrumentalities of, interstate commerce, or by the use of the mails, or of a facility of a national securities exchange, violated Rule 105 of Regulation M [17 C.F.R. § 242.105] by covering short sales made during the period beginning five days before the pricing of the offering securities with offered securities purchased in those offerings.

58. By reason of the activities described herein, the Defendants, singly or in concert, directly or indirectly, violated and, absent an injunction, again would violate Rule 105 of Regulation M [17 C.F.R. § 242.105].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently restraining and enjoining Defendants CIM, Colonial and Brody, their officers, agents, servants, employees, and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Rule 105 of Regulation M [17 C.F.R. § 242.105].

### II.

Ordering Defendants CIM, Colonial and Brody, to disgorge any ill-gotten gains from the conduct alleged herein, jointly and severally, and to pay prejudgment interest thereon.

### III.

Imposing civil money penalties on Defendant Brody pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## IV.

Granting such other and further relief as to this Court seems just and proper.

Dated: New York, New York
November _13_, 2007

By: _/s/ Mark K. Schonfeld_
Mark K. Schonfeld

Regional Director
New York Regional Office
SECURITIES AND EXCHANGE COMMISSION
3 World Financial Center, Room 400
New York, NY 10281-1022
(212) 336-1020
SchonfeldM@sec.gov
Attorney for Plaintiff

Of Counsel:

Andrew M. Calamari
Robert J. Keyes
Ken C. Joseph
Valerie A. Szczepanik
Laura V. Yeu

19