UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION, :
                       Plaintiff,

    -against-                             07 CV 8849 (PKC)
                                         ELECTRONIC FILING

COLONIAL INVESTMENT
   MANAGEMENT LLC,
COLONIAL FUND LLC, and
CARY G. BRODY,

                    Defendants.

---

**DEFENDANT'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF DEFENDANT'S MOTION
TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 277-6500

Of Counsel:
Ira Lee Sorkin
Nicole De Bello
Bradley Brown – Legal Clerk

Defendants Colonial Investment Management LLC ("CIM"), Colonial Fund LLC ("Colonial") and Cary G. Brody ("Brody") respectfully submit this Memorandum of Law in reply to the Opposition Brief ("Opp. Br.") of Plaintiff Securities and Exchange Commission ("Commission") and in further support of Defendants' motion to dismiss the Amended Complaint ("Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

## Preliminary Statement

Defendants concede that their motion to dismiss is not applicable to the Commission's claims for disgorgement, prejudgment interest, and civil penalties and that this relief must await a factual determination. Nevertheless, Defendants contend that the Commission is not entitled to injunctive relief for violation of a rule that was not in effect at the time that the conduct alleged in the Complaint occurred. Injunctive relief is, as the Commission concedes, prophylactic and is intended not to punish for past violative conduct but future misconduct. Accordingly, Defendants reiterate their request that the Complaint be dismissed with respect to this claim for relief.

The Commission maintains that an injunction is proper because "by their conduct, Defendants violated both the former and amended versions of Rule 105 and are likely to engage in acts to violate the Rule, as amended, in the future." Opp. Br. at 2. This statement exemplifies the legal fallacy of the Commission's position for two reasons. First, the Defendants "by their conduct" (namely, engaging in certain securities transactions between October, 2001 and December, 2004) could not have violated a rule that became effective in October, 2007. Indeed, the last violative transaction alleged in the Complaint occurred in December, 2004, almost two years before the promulgation of the new rule. Common sense dictates that an individual cannot prospectively violate a regulation that had not yet been enacted.

1

Second, the Complaint contains allegations of a likelihood of future violations based on mere speculation and conjecture, and the Opposition Brief does little to remedy this deficiency. Allegations in both the Complaint and Opposition Brief that the Defendants are likely to repeat past violations amount to nothing more than labels and conclusions and should not serve as a foundation for obtaining injunctive relief.

## ARGUMENT

### I. THE COMMISSION DOES NOT ALLEGE ANY FACTS TO SUPPORT AN ACTUAL VIOLATION OF NEW RULE 105

The Commission states several times in its Opposition Brief that the Defendants' past conduct violated or would violate new Rule 105. Opp. Br. at 2 ("By their conduct, Defendants violated both the former and amended versions of the Rule 105. . . ."); Opp. Br. at 6 ("The Defendants' conduct alleged in this Complaint would violate the amended Rule 105 as well."); Opp Br. at 8 ("If the same exact conduct was repeated by Defendants in the future, as Plaintiff alleges is likely, that conduct would violate Rule 105, as amended."). By repeatedly framing the issue in this way, the Commission demonstrates that it has either ignored or failed to comprehend the central thrust of the Defendants' argument. Aptly illustrated by the "cell phone analogy" (see Defendants' Brief at 1), the issue is not whether Defendants' past conduct would violate new Rule 105 today, but whether a court may grant an injunction against violations of new Rule 105 *prospectively*, before any factual allegations that Defendants directly violated the new rule since its enactment have been pled.

Baldly asserting that the Defendants violated the new Rule 105 through conduct carried out two years before the rule was in place is not only factually inaccurate but legally nonsensical. Moreover, that Defendants' past conduct "would have" violated new Rule 105 is irrelevant –

Defendants cannot be obligated to conform their conduct to, or be held retroactively accountable for violations of, a rule is not in effect while the conduct in question occurred.

### A.   The Commission's Reliance on Cited Case Law is Misplaced

The Commission cites several cases in support of its argument that facts alleging violation of new Rule 105 are not necessary, as courts often grant injunctive relief based solely on alleged violations of similar or amended regulations. A closer look at these cases reveals that the Commission exaggerates the applicability of several legal principles to the present matter.

The Commission argues for the applicability of a "firmly established" principle gleaned from N.L.R.B. v. Express Pub. Co., 312 U.S. 426 (1941), asserting that federal courts have the power to restrain acts of the same type or class as unlawful acts that the court has found to have been committed.

The Commission cites two cases which it maintains, erroneously, illustrate the application of the Express Publishing principle. In both cases, it is significant that the rule at issue was not substantially replaced, as it was in the present case, but only nominally modified. The first case, US v. St. Regis Paper, 106 F. Supp. 286 (S.D.N.Y. 1952), provides a cogent and relevant example of a rule alteration that would likely preclude injunctive relief. "Only the yardstick by which the ceiling price is measured has been adjusted. If price regulations had been completely abolished defendants' position [that they cannot be enjoined from violating the superseding statute] would have merit." Id. at 290.

The scenario in the instant case is analogous to the foregoing example. New Rule 105 did not finely tune or modestly adjust the old version; instead, Rule 105 was so altered that the very act at the core of the prohibition (the covering component) was "completely abolished."[1]

---

[1] In the words of the Commission, "[f]ormer Rule 105 prohibited covering short sales effected during a defined restricted period with securities purchased during a defined restricted period with securities purchased in an offering. *"Covering" was the prohibited activity."* Short Selling in Connection with a Public Offering, 72 Fed. Reg. 45094 (Aug. 10, 2007) (emphasis added).

Here, Defendants position has merit because, as in the St. Regis court's example, the superseding regulation "completely abolished" the violative conduct.

In the second case, Bowles v. May Hardwood Co., 140 F.2d 914 (6th Cir. 1944), cited by the Commission, the "superseding" regulations amounted to nothing more than several slight tweaks in numeric pricing terms: Alterations that were inherent to the nature of the regulations at issue, which required revisions from time to time in order to "meet continuing changes in economic conditions, demand and supply, the effect of weather, labor supply and other elements upon production." Id. at 917. Again, the regulations at issue in Bowles were modified and not abolished, as was the predecessor to new Rule 105. Also, the Commission underscores the Sixth Circuit's concern with the myriad of injunction suits that would have followed if the injunction against violating the amended regulation in that case was denied. Opp Br. at 11. Such a concern, however, is not present in the instant case because securities regulations do not share with lumber pricing regulations the variable characteristics outlined above.

Additionally, Bowles reiterates another important principle emanating from Express Publishing that is relevant to the present case. The court emphasized that, while it is within its powers to restrain future acts based on past violations,

> [t]he mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute and thus subject the defendant to contempt proceedings if he shall at any time in the future commit some new violation unlike and unrelated to that with which he was originally charged.

Bowles, 140 F.2d 914, 916 (quoting Express Publishing, 312 U.S. at 435-36). This important proviso demonstrates that courts do not have an unfettered right to impose a broad injunction against violating *the same* statute as the one that a defendant was originally charged with violating. Thus, a court would certainly not be justified in

---

The new Rule 105 "changes the prohibited activity from covering to purchasing the offered security. . . ." Id. at *45096.

4

imposing upon an individual a broad injunction against violating a statute *different* than the one under which he was originally charged, which is just what the Commission attempts to accomplish here.

### B. Cited Securities Law Cases Do Not Support an Injunction Against Violating a New and Substantively Altered Regulation

The Commission also cites cases where it was a party to support its contention that it need not allege a violation of new Rule 105, because courts have previously granted equitable relief under revised securities law regulations where the conduct in question violated a predecessor regulation. In particular, the Commission focuses on SEC v. U.S. Envtl., Inc., 2003 U.S. Dist. LEXIS 12580 (S.D.N.Y. Jul. 21, 2003), aff'd 2004 U.S. App. LEXIS 22548 (2d Cir. 2004) as an example of a court issuing an injunction against violating a superseding regulation. However, the successor regulations in U.S. Envtl. (Rules 101 and 102 of Regulation M) shared much in common with their predecessor (Rule 10b-6), and did not substantively change the violation-causing conduct. Also, the new regulations superseded the old while the violative conduct was still ongoing.[2] Rule 105, however, was implemented *after* Defendants' last alleged unlawful transaction.

---

[2] While Rules 101 and 102 of Regulation M were deemed successors to Rule 10b-6 on March 4, 1997 (U.S. Envtl., at *87 n.6), the defendants' unlawful conduct extended through at least 2002. Id. at *47 (stating that "[defendant's] representation to the examination staff on May 23, 2002 was false. . . .").

## II. THE COMMISSION DOES NOT SUFFICIENTLY ALLEGE A LIKELIHOOD OF RECURRENCE OF VIOLATIVE CONDUCT

In its Opposition Brief, the Commission selectively cites Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955 (2007) to suggest that it has sufficiently carried its burden by alleging facts that satisfy the elements necessary to obtain injunctive relief. While the Commission properly states that "[a] plaintiff is not required to set out in detail the facts on which it bases its claims," (Opp. Br. at 3), it overlooks the full scope of a plaintiff's responsibility: "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusion. . . ." Id. at 1965 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). In Twombly, the Court granted the petitioners' motion to dismiss because the plaintiffs failed to allege facts sufficient to state a claim under §1 of the Sherman Act. In finding for the petitioners, the Court held that plaintiffs failed to "nudge their claims across the line from conceivable to plausible." Id. at 1974.

Similarly here, the Complaint fails to nudge its claim for injunctive relief past the conceivable realm, and the Opposition Brief is an unsuccessful attempt at resolving those deficiencies. Specifically, the Commission states that, "[t]he allegations of repeated conduct alone here are sufficient to meet the Commission's burden to allege likelihood of recurrence." This statement is legally without merit for various reasons. First, the Second Circuit requires the Commission to show not simply a likelihood of recurrence, but a *substantial* likelihood of recurrence. See SEC v. Commonwealth, 155 F.3d 129, 135 (2d Cir. 1998) ("The SEC must demonstrate that there is a substantial likelihood of future violations of illegal securities conduct."); see also SEC v. Unifund SAL, 910 F.2d 1028, 1040 (2d Cir. 1990).

Second, alleging only that Defendants have repeatedly violated the old Rule 105 is an insufficient basis upon which to grant an injunction, even in light of the case law cited by the Commission. The cases presented by the Commission to support this argument involved

scenarios in which an injunction was sought against violating the very same rule that was alleged to have been violated in the past.

For example, in SEC v. Manor Nursing Ctrs., Inc., 458 F.2d 1082 (2d Cir. 1972), the Second Circuit permanently enjoined defendants from further violating antifraud provisions and prospectus-delivery requirements of federal securities laws – the same laws that they were originally alleged to have violated. Unlike the present case, the Commission was not seeking an injunction against future violations of a different or even amended regulation.

The Commission also fails to highlight the Manor court's emphasis on the nature of the past violation as having an "important bearing on the reasonable expectations of future violations." Id. at 1100. The defendants in Manor were enjoined from future violations based on past *fraudulent* conduct that was "willful, blatant, and often completely outrageous." Id. Defendants here note that they have not been charged with any degree of fraud. Additionally, nowhere does the Complaint suggest that Defendants' activities reached the level of "blatant" or "outrageous". On the contrary, Defendants at all times, pursuant to scant guidance regarding a vague and ambiguous rule, conducted their trading activities within the bounds of old Rule 105, and have strictly complied with new Rule 105 since its enactment. Even assuming a violation of the old Rule 105, which Defendants do not concede, the violation was the result of unsuccessful yet earnest attempts at complying with a vague and ambiguous rule, and in no way justifies the imposition of an injunction.

Furthermore, as the Commission points out in its Opposition Brief, courts generally consider four factors in determining whether there is a reasonable likelihood of future violations. They are: (1) the egregiousness of the violation; (2) the degree of scienter; (3) the isolated or repeated nature of the violations; and (4) the sincerity of defendant's assurances against future violations. SEC v. Haligiannis, 470 F. Supp. 2d 373, 384 (S.D.N.Y. 2007); SEC v. Cavanagh,

155 F.3d 129, 135 (2d Cir. 1998). As discussed above, the purported violations are not alleged to be egregious in nature. The Commission does, however, attempt to display a degree of scienter by alleging Defendants' use of "sham transactions in an effort to conceal" their misconduct. Opp. Br. at 15. By characterizing Defendants' conduct as "sham transactions," the Commission again avoids providing factual foundations and instead utilizes labels and legal conclusions that do not serve to raise the allegations in the Complaint above a speculative level. See Twombly, __ U.S. __, 127 S. Ct. at 1965.

It is significant that the transactions labeled "shams" by the Commission but not particularized at all in the Amended Complaint were never prohibited by Rule 105 and were addressed only through Commission releases.[3] Commission releases amount to little more than an expression of concern over the propriety of certain trading activities (see SEC v. Lyon, __ F. Supp.2d __, 2008 WL 53102, at *12 (S.D.N.Y. Jan. 2, 2008)), and because these releases are not formal rules or regulations, they should not be entitled to any deference beyond their "power to persuade." See Christensen v. Harris County, 529 U.S. 576, 587 (2000). By pointing to alleged "sham transactions" as a basis for this Court to infer a degree of scienter and, ultimately, a likelihood of future violations, the Commission ignores the reality that prompted its rule makers to replace old Rule 105 with a new rule: The vague and ambiguous nature of the old rule was such that even honest, law abiding investors found it difficult to determine what was and was not compliant conduct. Before the new Rule came into effect, the public could not read the language of Rule 105 and come away with a clear understanding of which activities were prohibited. As such, allegations of past violations of old Rule 105 and use of "sham transactions" do not demonstrate any level of scienter by the Defendants, amount to no more than "labels" and

---

[3] See Regulation SHO Proposing Release, 68 Fed. Reg. 62972, at *62999 (Nov. 6, 2003); Regulation SHO Adopting Release, 69 Fed. Reg. 48,008, at *48020-21 (July 28, 2004).

"conclusions" and should not lead to an inference that Defendants are likely to violate new Rule 105 in the future.

## CONCLUSION

For all the foregoing reasons, and all the reasons set forth in its initial brief, Defendants asks that the Amended Complaint herein be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), insofar as the relief sought is injunctive in nature, and requests an award of the costs and attorneys fees incurred by the Commission, along with such other and further relief as this Court deems just and proper.

Dated: New York, New York  
       January 18, 2008

Respectfully submitted,

DICKSTEIN SHAPIRO LLP  
By:___s/Ira Lee Sorkin_____  
Ira Lee Sorkin  
Nicole De Bello  
Bradley Brown – Legal Clerk  
1177 Avenue of the Americas  
New York, New York  10036  
(212) 277-6500  
Attorneys for the Defendants

## Certificate of Service

I hereby certify that on January 18, 2008, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service upon the following parties and participants:

Valerie A. Szczepanik, Esq.
Securities and Exchange Commission
3 World Financial Center – RM 400
New York, New York  10281-1022
(212) 336-0175
Attorney for Plaintiff

                                                                                                      s/Bradley Brown
                                                  Bradley Brown, Legal Clerk
                                                  Dickstein Shapiro LLP
                                                  1177 Avenue of the Americas
                                                  (212) 277-6500
                                                  brownb@dicksteinshapiro.com
                                                  Counsel for Defendants