VALERIE A. SZCZEPANIK
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center – RM 400
New York, New York 10281-1022
(212) 336-0175

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -against- | : | |
| | : | |
| COLONIAL INVESTMENT | : | 07 CIV 8849 (PKC) |
| MANAGEMENT LLC, | : | |
| COLONIAL FUND LLC, and | : | |
| CARY G. BRODY, | : | |
| | : | |
| | : | |
| Defendants. | : | |

---

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER TO QUASH DEPOSITION SUBPOENA

Plaintiff Securities and Exchange Commission ("Commission") respectfully requests

that the Court issue a protective order, under Federal Rules of Civil Procedure 26 and 45(3)(A),

to quash a deposition subpoena issued to Dr. Erik R. Sirri ("Dr. Sirri"), Director of the

Commission's Division of Trading and Markets. The subpoena is attached as Exhibit A hereto.

As grounds for the protective order, the Commission asserts that Dr. Sirri's testimony is: (1)

irrelevant to this case; and (2) protected from discovery by the government deliberative process

privilege. On these bases, the Commission requests that the subpoena be quashed.

## BACKGROUND

The Commission's Allegations

On October 15, 2007, the Commission filed this enforcement action against Defendants Colonial Investment Management, LLC ("CIM"), Colonial Fund LLC ("Colonial"), and Cary G. Brody ("Brody") (collectively, the "Defendants"). The Amended Complaint ("Complaint"), filed November 14, 2007, alleges that, between 2001 and 2004, Defendants violated Rule 105 of Regulation M ("Rule 105") under the Securities Exchange Act of 1934 ("Exchange Act") when they used shares purchased in at least eighteen registered public offerings to cover short sales that occurred during the five business days before the pricing of those offerings (the "restricted period"). (Compl. ¶ 1.) Defendants realized profits from this illegal trading in excess of $1.48 million. (Id.)

The Commission further alleges that Defendants continued to violate Rule 105 even after they knew, on or about July 17, 2003, that the Commission staff was investigating Defendants' participation in certain equity offerings. Despite having actual notice of the Commission's investigation, Defendants continued to violate Rule 105, committing fourteen of the eighteen specifically alleged violations after July 17, 2003. Defendants committed nine of the ten violations involving the use of sham transactions after learning of the Commission's investigation. (Compl. ¶ 52.) During 2004 and 2005, Defendants may have committed further violations of Rule 105 in connection with additional registered offerings by covering restricted period short sales with shares purchased in the registered offerings. (Compl. ¶ 51.)

The Commission alleges that, in light of Defendants' numerous and repeated past violations of Rule 105, and their use of sham transactions to conceal their violative trading, it is likely that Defendants will continue to violate Rule 105, even as that rule has been amended, in the future. (Compl. ¶ 55.) The Complaint seeks a judgment: (1) permanently enjoining each Defendant

2

pursuant to Exchange Act § 21(d)(1), 15 U.S.C. § 78u(d)(1), from further violating Rule 105 of

Regulation M, 17 C.F.R. § 242.105;  (2) requiring Defendants to disgorge all their ill-gotten gains,

with prejudgment interest, under the Court's inherent equitable powers, 18 U.S.C. § 78u(d)(5); and

(3) imposing civil monetary penalties against Defendant Brody under Section 21(d)(3) of the

Exchange Act, 15 U.S.C. § 78u(d)(3).  (Compl. ¶ 4.)

Rule 105

Rule 105, at the time of the conduct alleged in the Complaint, prohibited Defendants from

taking essentially three steps: (1) short selling prior to an offering, (2) purchasing shares in the

offering and (3) covering the pre-offering short position with the shares purchased in the offering.[1]

Rule 105, as amended, prohibits taking two of those steps, so that: (1) if you short sell prior to an

offering, you cannot also (2) purchase shares in the offering.[2]  Defendants' conduct alleged in the

Complaint violated both versions of Rule 105 because, in each instance alleged in the Complaint,

Defendants took all violative steps.

Defendants' Deposition Subpoena to Dr. Sirri

Among other things, Defendants have argued, in a pending motion to dismiss, that Rule 105

was vague, and that an adopting release to the Commission's Regulation SHO amounted to an *ex*

---

[1]  Rule 105, in effect at the time of the conduct alleged in the Complaint, provided in pertinent part:
"In connection with an offering of securities for cash pursuant to a registration statement…filed
under the Securities Act, it shall be unlawful for any person to cover a short sale with offered
securities purchased from an underwriter or broker or dealer participating in the offering, if such
short sale occurred during the [Restricted Period]." 17 C.F.R. §242.105(a) (2006).

[2]  Amended Rule 105, which became effective October 9, 2007, provides in pertinent part: "In
connection with an offering of equity securities for cash pursuant to a registration statement … filed
under the Securities Act …, it shall be unlawful for any person to sell short … the security that is
the subject of the offering and purchase the offered securities from an underwriter or broker or
dealer participating in the offering if such short sale was effected during the [Restricted Period]."
17 C.F.R. §242.105(a) (2007).

3

*post facto* rulemaking with respect to Rule 105. (See Defs' Mem. of Law in Supp. of their Mot. To

Dismiss, Dkt. #16, at 7.) To buttress the argument in their motion to dismiss, Defendants pointed to

remarks Dr. Sirri made at a December 4, 2006 public meeting.[3] Now, Defendant Brody – the

individual alleged to be responsible for the trading in this case – has admitted that Rule 105 was not

vague *to him*; rather, he believes that Rule 105 was vague *to the Commission*. (See Ex. B (Brody

Dep. Test.) at 229-30.) Defendants seek Dr. Sirri's deposition, in an apparent effort to further

develop their assertion that Rule 105 was unclear to the Commission – an assertion that is

completely irrelevant to this enforcement action.

     Dr. Sirri's deposition subpoena should be quashed because his testimony is irrelevant. The

interpretation of Rule 105 is a matter for the Court in the present case, an action to determine

whether Defendants violated and are likely to continue to violate Rule 105. Additionally, Dr. Sirri's

remarks are a matter of public record. An inquiry of Dr. Sirri about Rule 105 impermissibly delves

into the Commission's deliberative processes.

## ARGUMENT

### I.    Dr. Sirri's Testimony Is Irrelevant

     Dr. Sirri's deposition cannot lead to the discovery of admissible evidence as required by

Federal Rule of Civil Procedure 26(b)(1). Presumably, Defendants seek the testimony of Dr. Sirri

to buttress their assertion Rule 105 was vague or unclear to the Commission. That assertion is

---

[3] Plaintiffs filed an opposition to Defendants' motion to dismiss, setting forth in detail why
Defendants' assertion in this regard is specious. Among other reasons, Defendants argument is a
red herring because the proposing release to Regulation SHO did not relate to the conduct at issue
here; the release did not alter the meaning of Rule 105 or attempt to prohibit conduct not already
encompassed by Rule 105; and Dr. Sirri's remarks do not evidence that Rule 105 was vague or
unclear in any way. (See Pl's Mem. of Law in Opp. to Defs' Mot. to Dismiss, Dkt. # 18, at 14-23.)
Plaintiff will not repeat in detail the arguments in its opposition to Defendants' motion to dismiss
here, but incorporates them by reference.

irrelevant to whether the Defendants have violated and are likely to violate Rule 105. The interpretation of Rule 105 is a matter for the Court to decide. The Court must judge Defendants' conduct by the legal standards applicable to their conduct. Rule 105 says what it says; Commission staff's statements and opinions do not change its terms.

Even if Defendants' assertion that the Commission was confused about Rule 105 were relevant, which it is not, Dr. Sirri cannot testify as to the Commission's views of Rule 105. See 17 C.F.R. § 202.1(d) ("opinions expressed by members of the staff do not constitute an official expression of the Commission's views"); cf. 15 U.S.C. § 78d-1 (Commission may delegate, by published order or rule, its functions to a division of the Commission). Statements of Commission staff are not statements of the Commission, which acts as a collegial body through its Chairman and Commissioners. See, e.g., SEC v. National Student Mktg. Corp., 538 F.2d 404, 406-07 (D.C. Cir. 1976) (affirming district court that, "internal documents authored by agency staff or individual Commissioners 'cannot be considered as an official expression of the will and intent of the Commission.'"); Pennzoil Co. v. DOE, 680 F.2d 156, 161-62 & n.8 (Temp. Emer. Ct. App. 1982) (citing cases).

Nor can Dr. Sirri's testimony about his own thoughts regarding Rule 105 be at all relevant. The obligation to comply with the securities laws is the Defendants', and this obligation cannot be shifted to the Commission or its staff under any circumstances. See, e.g., SEC v. Culpepper, 270 F.2d 241 (2d Cir. 1959) (Commission and its agents may not "waive" violations of federal law); Capital Funds, Inc. v. SEC, 348 F.2d 582, 588 (8th Cir. 1965); SEC v. Morgan, Lewis & Bockius, 209 F.2d 44 (3d Cir. 1953); Mines and Metals Corp. v. SEC, 200 F.2d 317 (9th Cir. 1952). It follows that Defendants "do not have the right to rely on [Dr. Sirri] to tell them how to comply with the securities laws, nor can they successfully assert the absence of such assistance as a defense."

SEC v. Falstaff Brewing Corp., 1978 U.S. Dist. LEXIS 14669, *73-74 (D.D.C. 1978), aff'd, 629
F.2d 62 (D.C. Cir. 1980).

The testimony Defendants seek can have no bearing on the Court's resolution of this case
and is irrelevant. Where Defendants cannot lawfully use Dr. Sirri's testimony to establish any
defense, permitting this deposition to proceed will subject Dr. Sirri and the Commission to
annoyance, undue burden and expense.

## II.    Dr. Sirri's Testimony is Protected by the Government Deliberative Process Privilege

Federal Rules of Civil Procedure 26 and 45(c)(3)(A) provide that a court may issue a
protective order to quash a subpoena if it requires the disclosure of privileged or other protected
matter, and no exception or waiver applies. Plaintiff asserts that the testimony of Dr. Sirri is
protected from discovery by the government deliberative process privilege. No exception or
waiver applies.

The deliberative process privilege protects materials that concern the "decision making
processes of government agencies." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150-51 (1975)
(disclosure of intra-agency deliberations and advice is injurious to federal government's decision-
making functions because it tends to inhibit frank and candid discussion necessary to effective
government); see also International Paper Co. v. Federal Power Comm'n., 438 F.2d 1349, 1359 (2d
Cir. 1971) (there is a "privilege, customarily enjoyed by the Government in its litigations, against
having to reveal those internal working papers in which opinions are expressed and policies
formulated and recommended"); Dow Jones & Co. v. DOJ, 917 F.2d 571, 573 (D.C. Cir. 1990)
(the privilege is an "ancient privilege … predicated on the recognition 'that the quality of
administrative decision-making would be seriously undermined if agencies were forced to
operate in a fishbowl.'") (citation omitted). The privilege protects "advisory opinions,

6

recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." Sears, 421 U.S. at 150 (citation omitted).

Thus, for example, the privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Coastal States Gas Corp. v. DOE, 617 F.2d 854, 866 (D.C. Cir. 1980); see also Lawyers Comm. For Human Rights v. INS, 721 F. Supp. 552, 562 (S.D.N.Y. 1989) (the privilege (embodied in 5 U.S.C. § 552(b)(5)) "protects the important policies of 'encouraging full and candid intra-agency discussion and shielding from disclosure the mental processes of executive and administrative officers.'") (citation omitted); Landfair v. Department of the Army, 645 F. Supp. 325, 330 (D.D.C. 1986) (privilege applies when information "would reveal the thought process of the agency prior to the adoption of a specific course of conduct"). In addition, in some circumstances, the disclosure of even factual material may expose the deliberative process within an agency, such that it must be withheld as privileged. See, e.g., Mobil Oil Corp. v. FTC, 406 F. Supp. 305, 315 (S.D.N.Y. 1976); Mead Data Central, Inc. v. Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977) (citing cases).

A court can override the deliberative process privilege only upon a showing that the evidentiary need for the privileged material outweighs the public interest in protecting disclosure of the agency's deliberations and deliberative process. See, e.g., In re Sealed Case, 121 F.3d 729, 737-38 (D.C. Cir. 1997) (where documents may shed light on government misconduct, the privilege is denied); Redland Soccer Club, Inc. v. Department of the Army, 55 F.3d at 853, 854 (3d Cir. 1995) (a district court, in balancing the interests, should consider at least the following factors: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the

7

litigation; [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.") (citation omitted).

Dr. Sirri, in his role as Director of the Commission's Division of Trading and Markets, made remarks to the Commission in a December 4, 2006 public meeting that concerned a proposed amendment to Rule 105. Those remarks are a matter of public record. (See http://www.connectlive.com/events/secopenmeetings/2006index.html, at 1:25:10.) To the extent that Dr. Sirri had internal communications with the Commission or its staff about his remarks or the proposed amendment to Rule 105, those activities are the foundation for the Commission's rulemaking and fall squarely within the scope of the deliberative process privilege.

To allow the defendants to depose Commission staff about Commission rulemaking will do great harm to the Commission rulemaking for several reasons. Among other things, it will inhibit candid discussions among the staff, if they know that each remark is a potential item of discovery. And, it will result in a substantial burden and delay because Commission employees will be subject to numerous depositions that will take them away from their principal job responsibilities. Furthermore, because the Commission's need to protect its internal deliberations far outweighs any possible relevance of Dr. Sirri's testimony (which, indeed, is irrelevant), Defendants cannot overcome the privilege.

## CONCLUSION

Dr. Sirri's testimony is entirely irrelevant to the present case. What is at issue are Defendants' actions and whether they complied with federal securities laws. The Court should quash the subpoena to prevent Defendants delving into irrelevant matters designed to delay and distract from that which is genuinely at issue. Alternatively, the Court should grant the

Commission's motion in view of the deliberative process privilege protections afforded Dr.

Sirri's internal Commission communications regarding the rule.

 The Commission respectfully requests that the subpoena issued to Dr. Sirri be quashed.

A proposed Order is attached hereto as Exhibit C.  In the alternative, the Commission requests

that the Court order the scope of the depositions be limited substantially.


Dated: April 11, 2008
  New York, New York


         s/ Valerie A. Szczepanik
         VALERIE A. SZCZEPANIK
         Attorney for Plaintiff
         Securities and Exchange Commission
         New York Regional Office
         3 World Financial Center – RM 400
         New York, NY  10281-1022
         Ph: (212) 336-0175
         Fx: (212) 336-1317
         szczepanikv@sec.gov

# EXHIBIT A

AO88  (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

UNITED STATES DISTRICT COURT

Southern _____  DISTRICT OF _____  New York

| | |
|---|---|
| Securities and Exchange Commission<br>V. | **SUBPOENA IN A CIVIL CASE** |
| Colonial Investment Management LLC, et. al. | Case Number:[1]  07 CV 8849 (PKC) |

TO:
>    Erik R. Sirri - Securities and Exchange Commission
>    100 F Street NE
>    Washington, DC  20549

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION<br>Dickstein Shapiro LLP<br>1825 Eye Street NW, Washington, DC  20006-5403 | DATE AND TIME<br>4/8/2008 10:00 am |
|---|---|

☐  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
|  — att for defendants | 3/26/2008 |
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER | |
| Ira Lee Sorkin, Dickstein Shapiro LLP, 1177 Avenue of the Americas, New York, NY 10036, (212) 277-6500 | |

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

# EXHIBIT B

**Original Transcript**

UNITED STATES DISTRICT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
SECURITIES AND EXCHANGE COMMISSION,

       Plaintiff,

  vs.                            07 Civ. 8849
COLONIAL INVESTMENT MANAGEMENT, LLC,
COLONIAL FUND, LLC and
CARY G. BRODY,

       Defendants.
-----------------------------------------------------------------

      DEPOSITION OF CARY G. BRODY, taken by Plaintiff, at the offices of the

Securities and Exchange Comission, 3 World Financial Center, New York, New York,

on Tuesday, April 8, 2008, commencing at 2:20 p.m. before PATRICIA GUARINO, a

Shorthand Reporter and notary public, within and for the State of New York.



**Tankoos Reporting**
516.741.5235    212.349.9692    888.242.DEPO(3376)
Toll Free Fax: 800.337.6769
www.tankoos.com

142 Willis Avenue
Mineola, NY 11501

305 Madison Avenue
New York, NY 10165

Page 229

1      MS. SZCZEPANIK:   We are back on the record.

2      Q.   Now, I think you were telling us what exactly

3 was vague to you about Rule 105.

4      A.   Actually, the question was what was -- that

5 wasn't what you were asking me.  Do you want to ask me that

6 now?

7      Q.   Yes.

8      A.   What was vague about Rule 105?

9      Q.   To you.

10     A.   To me?  It wasn't vague to me.  I believe --

11 I'm sitting here today because it was, to be honest, that it

12 was vague to you guys, you being the SEC.

13     Q.   So you believe that in the 2001 to 2005 time

14 frame that you understood Rule 105?

15     A.   I understood it to the best of my knowledge,

16 with help the legal counsel, and I believe the SEC was

17 constantly vague and unsure of themselves, what the rule

18 meant.

19     Q.   Okay.  And other than the staff testimony you

20 referred to before, is there any other reason that you

21 believe that?

22     A.   Sure.

23     Q.   What was that?

24     A.   That you were constantly reviewing Rule 105 and

25 sending out comments.  I think it was as early as 2000, 2001



**Tankoos Reporting**
516.741.5235     212.349.9692     888.242.DEPO(3376)
Toll Free Fax: 800.337.6769
www.tankoos.com

142 Willis Avenue
Mineola, NY  11501

305 Madison Avenue
New York, NY 10165

Cary G. Brody                                              April 8, 2008

                                                          Page 230

1   you were sending out comment letters.  You were constantly
2   trying to change the rule.  You changed it in 2004.  You
3   changed it in 2007.  You made another change in, I think,
4   the '03 time period, give or take a year.
5          Q.    Any other reason?
6          A.    Any other reason that I believe the SEC was
7   confused with their own rule?  The fact that I'm sitting
8   here today.
9          Q.    Anything else?
10         A.    Legal counsel.
11         Q.    Anything else?
12         A.    I'm trying to think.  I believe that's all of
13  it.  There might be one or two other things that I can't
14  remember off the top of my head.
15         Q.    Did you keep one file of your research
16  regarding Rule 105?  I'm talking about your own research,
17  not things that counsel gave you.
18         A.    Did I keep one file?  No.
19         Q.    Did you keep a research file regarding Rule 105
20  containing things that you researched?
21         A.    I kept the documents.  I don't know if I kept
22  it in a file.  I probably kept it in a folder.
23         Q.    And you have that folder today?
24         A.    That I don't know, but I researched it numerous
25  times.  I probably Googled it 25-plus times.



**Tankoos Reporting**
516.741.5235    212.349.9692    888.242.DEPO(3376)
Toll Free Fax: 800.337.6769
www.tankoos.com

142 Willis Avenue
Mineola, NY 11501

305 Madison Avenue
New York, NY 10165

Cary G. Brody

April 8, 2008

Page 266

C E R T I F I C A T I O N

I, PATRICIA GUARINO, a Shorthand Reporter and notary public, within and for the State of New York, do hereby certify:

That CARY G. BRODY, the witness whose examination is hereinbefore set forth, was first duly sworn by me, and that this transcript of said testimony is a true record of the testimony given by said witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this *9th* day of *April*     , 2008.

*Patricia Guarino*

PATRICIA GUARINO,

Shorthand Reporter



# Tankoos Reporting

516.741.5235    212.349.9692    888.242.DEPO(3376)
Toll Free Fax: 800.337.6769
www.tankoos.com

142 Willis Avenue
Mineola, NY  11501

305 Madison Avenue
New York, NY 10165

WORD INDEX

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| | : |
| Plaintiff, | : |
| | : |
| -against- | : |
| | : |
| COLONIAL INVESTMENT | : 07 CIV 8849 (PKC) |
| MANAGEMENT LLC, | : |
| COLONIAL FUND LLC, and | : |
| CARY G. BRODY, | : |
| | : |
| | : |
| Defendants. | : |
| | : |

## [PROPOSED] ORDER QUASHING DEPOSITION SUBPOENA

Plaintiff Securities and Exchange Commission has filed a motion seeking a protective order pursuant to Fed. R. Civ. P. Rules 26 and 45(c)(3)(A) to quash a deposition subpoena issued by defendants for the deposition of Dr. Erik R. Sirri ("Dr. Sirri"), Director of the Commission's Division of Trading and Markets. Plaintiff has established that the deposition would not lead to the discovery of admissible evidence and/or would require the disclosure of privileged information which is protected from disclosure by the governmental deliberative process privilege. The Court finds there is good cause to issue a protective order to quash the deposition.

IT IS THEREFORE ORDERED that the subpoena for the deposition of Dr. Sirri is quashed.

Dated this ___ day of _____, 2008.

_____
United States District Judge