UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,

                          Plaintiff,                07 Civ. 8849 (PKC)

      -against-

                                                       MEMORANDUM
                                                         AND ORDER

COLONIAL INVESTMENT MANAGEMENT LLC,
COLONIAL FUND LLC, and CARY G. BRODY,

                          Defendants.
-----------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Plaintiff, the Securities and Exchange Commission ("SEC") brings this action against Colonial Fund LLC ("Colonial"), a New York-based hedge fund, Colonial Investment Management LLC ("CIM"), Colonial's adviser, and Cary G. Brody, a principal of CIM and Managing Director of and investor in Colonial (collectively, "defendants"). The amended complaint in this action, which was filed on November 13, 2007, ("Amended Complaint" or "A.C."), alleges violations of Rule 105 of Regulation M under the Securities Exchange Act of 1934 ("Exchange Act").

        Defendants move to dismiss so much of the Amended Complaint as seeks a permanent injunction against future violations of Rule 105. Defendants do not otherwise challenge the sufficiency of the Amended Complaint. In short, defendants argue that the Amended Complaint alleges violations of a version of Rule 105 which is no longer effective and that no facts are alleged that could support an injunction against future violations of revised Rule 105. For the reasons stated below, the motion to dismiss is denied.

I.  Background

In addressing defendants' motion, I have considered only the facts that are alleged in the Amended Complaint, drawing all inferences in favor of the non-movant, SEC. See Cosmas v. Hassett, 886 F.2d 8, 12 (2d Cir. 1989) (complaints should be read generously, and all inferences should be drawn in favor of the pleader.)

During the time of the conduct alleged in the Amended Complaint, Rule 105 provided, in pertinent part,

> [i]n connection with an offering of securities for cash pursuant to a registration statement or a notification on Form 1-A . . . filed under the Securities Act, it shall be unlawful for any person to cover a short sale with offered securities purchased from an underwriter or broker or dealer participating in the offering, if such short sale occurred during . . . [t]he period beginning five business days before the pricing of the offered securities and ending with such pricing . . . .

17 C.F.R. § 242.105 (effective until Oct. 8, 2007).

The purpose of Rule 105 is to prevent manipulative trading by short sellers prior to registered public offerings and to promote offering prices that are based upon open market prices, determined by supply and demand, rather than by artificial forces. (A.C. ¶¶ 2, 14.) According to the Amended Complaint, Colonial violated Rule 105 on at least eighteen separate occasions between October 31, 2001 and December 16, 2004, when it covered restricted period short positions with shares purchased in registered public offerings of eighteen different securities. (Id. ¶¶ 19-50.) On at least ten separate occasions, after violating Rule 105 by covering its restricted period short position with shares purchased in the offering, Colonial placed contemporaneous orders to buy and sell the same number of shares as its total pre-offering short position, which included its restricted period short sales. (Id. ¶¶ 32, 34, 36, 38, 40, 42, 44, 46, 48, 50.) Colonial directed the executing broker to cross the sell order with the buy

order at the same price. (Id.) The SEC alleges that these transactions were shams that had no economic purpose and were designed to hide Colonial's illicit covering with shares it earlier purchased in the offering. (Id.)

Subsequent to the last instance of offending conduct alleged in the Amended Complaint, the SEC amended Rule 105, effective October 9, 2007. (Id. ¶ 15.) The amendments broaden the scope of Rule 105, so that the rule now generally prohibits purchasing a security in a registered offering if the buyer has a restricted short position in that security. (Id.) The buyer no longer has to cover the short sale with the offered securities in order to violate the rule.

The SEC seeks, as relief, among other things, a permanent injunction against future violations of Rule 105 by defendants. 15 U.S.C. § 78u(d)(1).

II.   Discussion

A.   Motion to Dismiss Standard

Rule 8(a)(2), Fed. R. Civ. P., requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964 (2007) (internal quotations and citation omitted). When a defendant tests the sufficiency of a complaint by a motion under Rule 12(b)(6), "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 127 S. Ct. at 1965). The complaint is measured against a "flexible plausibility standard," which obligates the "pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). This

-4-

"does not require heightened fact pleading of specifics," In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007); see Erickson v. Pardus, __ U.S. __, 127 S. Ct. 2197, 2200 (2007); however, it does "require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'" Elevator Antitrust Litig., 502 F.3d at 50 (quoting Twombly, 127 S. Ct. at 1974) (alteration in Elevator Antitrust Litig.). On a motion to dismiss, a court must accept the allegations of the complaint as true and draw all reasonable inferences in the non-movant's favor. See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 71 (2d Cir. 1995) (per curiam).

B.     Injunctive Relief

The SEC seeks to enjoin defendants from future violations of Rule 105, in its current revised form, which prohibits a buyer from purchasing a security in a registered offering if the buyer has a restricted short position in that security. The SEC alleges that, on eighteen separate occasions, defendants have engaged in conduct that violated the now superseded version of Rule 105. Defendants argue that the claim for injunctive relief should be dismissed because the Amended Complaint fails to allege any violations of Rule 105 in its current form. Defendants contend that the allegations pertaining to violations of a version of Rule 105 that is no longer in effect are insufficient to support a finding that there is a reasonable likelihood that defendants will violate the current version of Rule 105. The SEC argues that the violations of the prior version of the rule, if proven, would support an injunction against a violation of the new rule.[1]

---

[1] Defendants also argue that an injunction in this case would be improper because, in interpreting Rule 105 to cover sham transactions, the SEC is engaging in improper ex post facto application of interpretive guidance. However, as the SEC points out in its opposition brief, it does not rely on the allegations relating to sham transactions as a basis for injunctive relief. (Opp. Br. 14-15.) Rather, it is the purchase, short sale and cover conduct, which the sham transactions were designed to hide, that would violate the current version of Rule 105 if repeated.

-5-

The Exchange Act gives federal courts the power to enjoin "any person [who] is engaged or [ ] about to engage in acts or practices" which constitute or will constitute a violation. 15 U.S.C. § 78u(d)(1).  The Second Circuit has held that this language "requires a finding of 'likelihood' or 'propensity' to engage in future violations."  SEC v. Commonwealth Chem. Sec., Inc., 574 F.2d 90, 99 (2d Cir. 1978) (citing Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341, 394 (2d Cir. 1972)).  The focus of this inquiry is on "the defendant's past conduct."  Id. at 99 (citation omitted).

As Judge Sweet recently noted in S.E.C. v. Power, "there is significant precedent in this circuit for granting injunctive relief . . . based upon allegations of past violations."  525 F. Supp. 2d 415, 427 (S.D.N.Y. 2007) (citing S.E.C. v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1100 (2d Cir. 1972) ("[F]raudulent past conduct gives rise to an inference of a reasonable expectation of continued violations."); SEC v. Alexander, 160 F. Supp. 2d 642, 655 (S.D.N.Y. 2001) (holding that the SEC properly pleaded a claim for injunctive relief, as "[p]otential future violation of the securities laws can be inferred from alleged past violations"); SEC v. Drescher, No. 99 Civ. 1419 (SAS), 1999 WL 946864, at *5 (S.D.N.Y. Oct. 19, 1999) ("In alleging [defendant] violated the securities laws, the SEC has adequately stated a claim for injunctive relief.")); see also SEC v. Naegeli, No. 92 Civ. 4583 (RPP), 1993 WL 15126, at *2 (S.D.N.Y. Jan. 12, 1993) ("the existence of past violations may give rise to an inference that there will be future violations" (citing SEC v. Mgmt. Dynamics, Inc., 515 F.2d 801, 807 (2d Cir. 1975); Manor Nursing Ctrs., 458 F.2d at 1100)).

Other factors courts should consider in determining whether there is a reasonable likelihood of future violations include: (1) the egregiousness of the past violations; (2) the degree of scienter; (3) the isolated or repeated nature of the violations; (4) whether defendant has

accepted blame for his conduct; and (5) whether the nature of defendant's occupation makes it likely have he will have opportunities to commit future violations.  See SEC v. Cavanagh, 155 F.3d 129, 135 (2d Cir. 1998) (citation omitted); SEC v. Everest Mgmt. Corp., No. 73 Civ. 4932, 1982 WL 1335, at *16 (S.D.N.Y. 1982) (citation omitted).  The SEC alleges that "[u]nless enjoined by the Court it is likely that the Defendants will continue to engage in the acts and practices alleged herein or acts of similar purport and object."  (A.C. ¶ 4.)  Among the Amended Complaint's allegations that point toward recurrence are assertions that defendants repeatedly and knowingly engaged in conduct that violated old Rule 105 (and which, if repeated today, would violate new Rule 105) over a period of several years, and engaged in sham transactions to conceal the violative conduct.  (A.C. ¶¶ 23-55.)  The SEC has sufficiently pled a reasonable likelihood of recurrence.

In order to obtain injunctive relief, the SEC need not allege violations of Rule 105 in its current form.  It is sufficient that the conduct it seeks to restrain is the same or similar to the illegal conduct which defendants have committed in the past.  See NLRB v. Express Pub. Co., 312 U.S. 426, 435 (1941) ("A federal court has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future unless enjoined, may fairly be anticipated from defendant's conduct in the past."); Bowles v. May Hardwood Co., 140 F.2d 914, 916 (6th Cir. 1944) (stating that there must be "a factual basis for determining whether [the] acts [sought to be restrained] are closely related to or of the same character as the unlawful acts which form the basis of the complaint."); U.S. v. St. Regis Paper Co., 106 F. Supp. 286, 290 (S.D.N.Y. 1952) ("[W]here a price regulation is modified or amended or . . . superseded by a regulation of similar import, the test is whether the violations proposed to be enjoined 'are so inseparably associated with past unlawful acts or

so similar to them in character that inevitably there follows an inference that one who commits one series of acts will be likely to commit another of like character.'" (quoting May Hardwood, 140 F.2d at 916)). Here, the conduct which the SEC seeks to enjoin—namely, the purchase and short sale conduct—is some of the same conduct which defendants allegedly engaged in and are likely to repeat.

In May Hardwood, the appellees argued that their past conduct, which violated an old regulation setting a price ceiling on a certain type of lumber, could not justify an order enjoining them from future violations of a new price ceiling regulation, because the past conduct, if repeated, would not violate the new regulation. 140 F.2d at 915. The court rejected this argument, stating that the appellant had established a sufficiently "close relationship and similarity between the acts committed and the acts sought to be restrained" to justify an order restraining future violations of the new regulation. Id. at 916-17. Similar results have been reached in other cases involving pricing regulations, see, e.g., Bowles v. Royal Wine & Liquor, Inc., 155 F.2d 137, 137-38 (7th Cir. 1946); St. Regis Paper Co., 106 F. Supp. 286, 290 (S.D.N.Y. 1952), and those cases are instructive in the context of securities regulations, where courts also have broad discretion to issue injunctions. See Everest Mgmt. Corp., 1982 WL 1335, at *15 ("In an action involving 'remedial' statutes, such as the Federal securities laws, a district court has broad discretion to enjoin future violations of law where past violations have been shown.").

A willingness to violate the prior version of Rule 105 may be some evidence of a willingness to violate the rule in its revised form. The degree of willfulness that the SEC is able to prove will have bearing upon the appropriateness of the relief it seeks. Accordingly, this Court will not dismiss the claims for injunctive relief at this stage of the litigation. The motion to dismiss is DENIED.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       May 22, 2008